UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBAL MONTELLO GROUP CORP., <br><br> Plaintiff, <br><br> v. <br><br> CLIPPER BULK SHIPPING LTD. <br><br> Defendant. | Civil Action No. _____ <br><br> IN ADMIRALTY |

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, Global Montello Group Corp. ("Global"), in the above-entitled action, by and through its attorneys, Eckland & Blando LLP, and respectfully files this Complaint for Declaratory Judgment as follows:

### JURISDICTION

1. This Court has jurisdiction under 28 U.S.C. § 1333(1) because the bunker supply contract in dispute is a maritime contract. Plaintiff hereby designates this claim as an admiralty and maritime claim pursuant to Fed. R. Civ. P. 9(h).

2. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. A present and actual case and controversy exists between the parties related to a bunker supply contract and Global asks this Court to adjudicate and determine the rights of the parties under that contract.

3. There is an actual case and controversy between the parties because, by letter dated May 31, 2022, Defendant Clipper Bulk Shipping Ltd. ("Clipper") demanded that Global appear

1

before an arbitrator in London, United Kingdom related to a dispute whereby Global allegedly supplied Clipper with deficient bunker fuel. Global disputes that the terms of the bunker supply contract between Global and Clipper obligate Global to appear before an arbitrator, in London, United Kingdom or otherwise.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the bunker supply contract between Global and Clipper states that "[e]ach party expressly submits to the jurisdiction of the courts of the Commonwealth of Massachusetts, U.S.A. and to the federal courts situated herein, as well as to service of process by certified mail."

## THE PARTIES

5. Global is a corporation organized and existing under the laws of the State of Delaware with a principal office located at 800 South Street, Suite 500, Waltham, Massachusetts 02453.

6. Upon information and belief, Clipper is a for profit corporation with a principal place of business at Sundkrogsgade 19, 2100 Copenhagen, Denmark.

## FACTUAL ALLEGATIONS

7. On or about June 15, 2021, a company named Hafnia, acting as broker and agent for Clipper, emailed Global a proposed order for bunker fuel.

8. Hafnia's June 15, 2021 email referenced in paragraph no. 7 above, specified the types of fuel product that Clipper requested, the amounts requested, the details of delivery, and the price that Clipper agreed to pay Global.

9. Hafnia's June 15, 2021 email referenced in paragraph no. 7 above also included a "TERMS & CONDITIONS" section at the bottom. In pertinent part, Hafnia wrote: "'BIMCO 2018 Fuel Contract, 24(a),' to apply unless otherwise agreed."

10. On or about June 16, 2021, the following day, Global sent Hafnia a "Sale Deal."

11. The Sale Deal confirmed the types of fuel product that Clipper requested, the amounts requested, the details of delivery, and the price Clipper would pay.

12. The Sale Deal between Global and Clipper also provided "Additional Provisions."

13. In the Additional Provisions, the Sale Deal states that:

> This agreement supersedes all prior communications and is the operative instrument with respect to this transaction. This agreement shall be governed by Global Companies LLC's General Terms and Conditions for Bunker Fuels (the "GTCs") which are incorporated by reference. A copy of such general terms and conditions will be provided upon request. Except for the GTCs and as otherwise explicitly set forth herein, Global Montello Group Corp. shall not be bound by any provisions or publications of any other company whether described or referred to as guidelines, general terms or other corporate standards.

14. In the Additional Provisions, the Sale Deal also provided a choice of law clause dictating that: "This agreement shall be construed in accordance with the internal laws of the State of New York."

15. Finally, following the Additional Provisions, the Sale Deal states that:

> If any of the above is contrary to your understanding of our agreement, please notify Global Companies LLC immediately by return communication. In the event no such notification is received by the close of the next working day following delivery of this agreement, the provisions set forth above shall be binding upon both parties.

16. At no time on and after June 16, 2022, did Clipper contact Global to question, dispute, or otherwise comment on the terms provided in the Sale Deal.

17. At no time on and after June 16, 2022, did Hafnia contact Global to question, dispute, or otherwise comment on the terms provided in the Sale Deal.

18. The General Terms of Conditions for Bunker Fuels ("GTCs") provides the following clause:

> ENTIRETY OF AGREEMENT: These "General Terms and Conditions" and the written particulars relating hereto (collectively, the "Agreement") constitute the

3

entire understanding of the parties relating to the transaction contemplated hereby. No modification or amendment to this Agreement shall be effective except if in writing and signed by the parties hereto.

19. The GTCs also provide the following forum selection clause and choice of law clause:

GOVERNING LAW, JURISDICTION: This Agreement shall be governed and construed in accordance with the internal laws of the Commonwealth of Massachusetts, U.S.A. Each party expressly submits to the jurisdiction of the courts of the Commonwealth of Massachusetts, U.S.A. and to the federal courts situated herein, as well as to service of process by certified mail.

20. To address any potential conflict between the GTCs and the Sale Deal, the GTCs also provides that:

VARIANCE, CONFLICT: In the event of any conflict between these "General Terms and Conditions" and the written particulars relating to a given transactions, the l[a]tter shall prevail.

21. Finally, the GTCs provide the following statement to confirm the parties' intentions:

If any of the above is contrary to your understanding of our agreement, please notify Seller immediately. If no such notification is received by the close of the working day following the transmission of this Agreement, the provisions set forth above shall be binding upon both parties.

22. At no time on and after June 16, 2022, did Clipper contact Global to question, dispute, or otherwise comment on the terms provided in the GTCs.

23. At no time on and after June 16, 2022, did Hafnia contact Global to question, dispute, or otherwise comment on the terms provided in the GTCs.

24. Global did not send Clipper a writing that acknowledged Hafnia's reference to 24(a) of the BIMCO 2018 Fuel Contact, or arbitration generally.

25. Global did not send Hafnia a writing that acknowledged Hafnia's reference to 24(a) of the BIMCO 2018 Fuel Contact, or arbitration generally.

26. Global did not send Clipper a writing that notified Clipper of Global's agreement to be bound by arbitration, whether in London, United Kingdom or otherwise.

27. Clipper did not receive a writing from Global that notified Clipper of Global's agreement to be bound by arbitration, whether in London, United Kingdom or otherwise.

28. Global did not send Hafnia a writing that notified Hafnia of Global's agreement to be bound by arbitration, whether in London, United Kingdom or otherwise.

29. Hafnia did not receive a writing from Global that notified Hafnia of Global's agreement to be bound by arbitration, whether in London, United Kingdom or otherwise.

30. On or about June 19, 2021, Global supplied, and Clipper contemporaneously accepted the supply of, the bunker fuels.

31. On or about June 19, 2021, Global supplied, and Clipper contemporaneously accepted the supply of, the bunker fuels subject to the Sale Deal and GTCs.

32. On or about August 31, 2021, Hafnia, on behalf of Clipper, emailed Global regarding "issues" that the "vessel experienced," and stated that a test was performed allegedly "indicating abnormal substances present in the fuel." In this same email, Hafnia acknowledged that the initial test "was in line with standard specs."

33. In September 2021, Global and Hafnia engaged in further correspondence regarding obtaining a "sample" of the relevant bunker fuel.

34. In September 2021, Global informed Hafnia that it could not produce a sample because it only retains samples for thirty (30) days.

35. On May 31, 2022, Winter Scott LLP, a law firm representing Clipper, sent a letter to Global that notified Global of a vessel owners' claim of alleged damage to the relevant vessel

because of allegedly deficient bunker fuel provided by Global. The letter stated that the vessel owners "value their claim as things stand at US$420,563.37, but further losses are likely to accrue."

36. The May 31, 2022 letter provided that:

In the circumstances, Clipper hold you as Suppliers liable for the consequences of supplying bunkers which do not comply with the terms of the ISO 8217:2010 in breach of Supplier's obligations under the Bunker Supply Contract.

37. The May 31, 2022 letter also provided that:

Clipper hereby commence[s] arbitration pursuant to Clause 24(a) of the incorporated BIMCO 2018 Fuel Contract:

(a) We hereby appoint Mr. Ian Green as Clipper's arbitrator with respect to any and all disputes arising out of or in connection with the Bunker Supply Contract. His contact details are as follows:

Apartment 26
6 Tiltman Place
Hornsey Road
London
N7 7EJ
ian.green@eigreen.co.uk

(b) We hereby call upon you to appoint your own arbitrator and to notify Clipper thereof within fourteen (14) calendar days of this notice.

(c) If you fail to so appoint your own arbitrator and notify Clipper of that appointment within the foregoing deadline, Clipper will proceed to appoint Mr. Ian Green as sole arbitrator with respect to the foregoing disputes without any further notice to yourselves.

38. In asserting this alleged right to arbitration under the "Bunker Supply Contract," the May 31, 2022 letter erroneously relied on statements found in Hafnia's June 15, 2021 email instead of the binding, and fully integrated, contract between Clipper and Global through the Sale Deal and the GTCs.

39. The GTCs, explicitly state, *inter alia*, that:

a. If any action, at law or in equity, is brought by Seller, either to interpret the provisions of this Agreement or to enforce Buyer's contractual obligation arising from the transactions referenced hereby, Seller shall be entitled to recover its reasonable attorney's fees from Buyer in the principal or related action in addition to any other relief to which Seller may be entitled.

## COUNT I

### ACTION FOR DECLARATORY RELIEF CONFIRMING THE TERMS AND CONDITIONS OF THE BUNKER SUPPLY CONTRACT AND DECLARING THAT GLOBAL HAS NO DUTY TO APPEAR AT THE LONDON ARBITRATION

40. Global hereby repeats and re-alleges each and every allegation set forth in Paragraph One through Thirty-Nine as if set forth herein.

41. Global and Clipper entered into a bunker supply contract for the provision of bunker fuels.

42. The bunker supply contract between Global and Clipper is evidenced through the Sale Deal and GTCs that Global provided Clipper when agreeing to provide its services of providing bunker fuel.

43. The bunker supply contract between Global and Clipper explicitly supersedes Hafnia's June 15, 2021 email that offered to have the parties' relationship governed by 24(a) of the BIMCO 2018 Fuel Contract.

44. The bunker supply contract dictates that any dispute between Global and Clipper shall be governed by New York law and that Clipper submits to the jurisdiction of this Court.

45. Nothing in the bunker supply contract between Global and Clipper requires Global to submit to arbitration, in London, United Kingdom or otherwise.

46. Clipper seeks to hold Global liable for the consequences of an alleged $420,563.37 loss that is allegedly related to Global's services under the bunker supply contract.

47.    Clipper commenced arbitration in London, United Kingdom related to its allegations against Global, and demanded that Global appoint an arbitrator within fourteen days or Clipper would proceed with the arbitration using its own designated arbitrator.

48.    As a result of Clipper's commencement of arbitration regarding its allegations against Global, Global has sustained actual prejudice, including but not limited to, involving its insurers and engaging counsel, and thus seeks this Honorable Court's declaratory judgment confirming that Global is not contractually required to submit to arbitration, in London, United Kingdom or otherwise.

49.    Until such time as Global is able to have its rights and responsibilities under the bunker supply contract adjudicated and confirmed, Global will continue to suffer actual prejudice with respect to Clipper's commencement of London arbitration, including, but not limited to, the obligation to retain London counsel, and the potential of an unfavorable arbitration result that could allow Clipper to enforce an arbitration judgment against Global's property and interests.

50.    As a result, a real justiciable issue exists regarding the existence of valuable rights under the bunker supply contract, and a *bona fide*, actual, and present dispute calling for this Honorable Court's declaratory judgment.

WHEREFORE, the Plaintiff Global Montello Group Corp., prays that this Honorable Court enter judgment for Plaintiff on Count I of its Complaint for Declaratory Judgment against the Defendant Clipper Bulk Shipping Ltd., and:

1. Enter a declaratory judgment declaring that the bunker supply contract between Global and Clipper is valid and that its terms are reflected in the Sale Deal and GTCs.

2. Enter a declaratory judgment declaring that bunker supply contact, through the Sale Deal and GTCs, reflect the entire agreement between Global and Clipper related to Global's services.

3. Enter a declaratory judgment declaring that nothing the in the bunker supply contract requires Global or Clipper to submit to arbitration, in London, United Kingdom or otherwise.

4. Enter a declaratory judgment declaring that the Global has no obligation to appear in the London arbitration that Clipper commenced.

5. Enter a declaratory judgment declaring that Global is not bound by any finding, decision, judgment, or otherwise in connection with any arbitration that Clipper commenced, or may hereafter commences, related to the bunker services agreement.

6. Enter a declaratory judgment declaring that any arbitration that Clipper commenced, or may hereafter commence, related to the bunker services agreement, shall not result in a finding of estoppel, preclusion, or res judicata with regard to Global.

7. Award Global any and all additional relief this Honorable Court deems Global is entitled to and/or is just and equitable, including its reasonable attorneys' fees as outlined in the GTCs.

Date: June 10, 2022

Respectfully submitted,

Global Montello Group Corp.

By its attorneys,

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley (BBO No. 670232)
Eckland & Blando LLP
22 Boston Wharf Road, 7th Floor
Boston, MA 02210
(617) 217-6936
sblatchley@ecklandblando.com

## Certificate of Service

I, Samuel P. Blatchley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 10, 2022.

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley (BBO No. 670232)
Eckland & Blando LLP
22 Boston Wharf Road, 7th Floor
Boston, MA 02210
(617) 217-6936
sblatchley@ecklandblando.com